Good morning and may it please the court. The court should reverse the conviction against Mr. Strong on count two of the indictment of witness tampering because there was no evidence that it was reasonably likely that his interview to Indiana State Trooper Wandersee would make it to the FBI in this case in the course of a federal prosecution. Trooper Wandersee testified that he had been working at the state of Indiana Pendleton Police Post for seven years from 2012 to 2019 and during that time only two out of the 40 use of force cases that he investigated had any FBI involvement. This is similar to the set of facts facing this court in the Snyder decision, the Snyder case where this court was persuaded that there were hundreds of robberies that took place in a particular judicial district and only approximately six of them had been prosecuted federally. So that sort of statistical evidence was important to this court in Snyder and I think it should be important in this case. As well, Trooper Wandersee testified that there were no formal procedures in place to share information between the Indiana State Police and the FBI at the Pendleton Police Post and he testified that it was months after he completed his state investigation before the FBI requested the investigative file. And that's different from the situation that this court faced in Scheffler where in that case the court noted that there was rather immediate FBI involvement in the investigation. Finally Strong was prosecuted in state court for criminal recklessness related to the arrest in question, which is another indication that this case was state only and not federal until months after Wandersee completed his investigation. Your Honors, the government would ask this court to read from Scheffler a bright line rule that excessive force cases raise what the government calls a core federal concern and therefore it is always reasonably likely that they would be prosecuted in federal court. I don't think that's the case and I think that would go against Snyder's holding that the fact that a federal crime has been committed is not sufficient. Are you asking us to modify Scheffler? I think Scheffler is distinguishable on the facts of this case for a couple of reasons, Your Honor. The first is in Scheffler the FBI involvement was rather immediate. The opinion notes that. In this case it was months later. Secondly, Scheffler involved an excessive force case involving death. This case did not. And so I think excessive force involving death might be closer to the line of that sort of case where the federal government is reasonably likely. There's an expectation or a reasonable likelihood that the FBI would take over that type of  That's right, Your Honor. And in fact in the Fowler Supreme Court opinion, which all these cases stem from, the court noted that a robbery in Fort Knox would be an example of a case where you would expect the federal government in almost every situation involving a robbery in Fort Knox that they would be involved, but not in this case. Of course the key question always remains the likelihood of federal involvement at the time of the misleading conduct, and the misleading conduct in this case is Strong's interview to Wandersee in the rather immediate aftermath of the arrest of JW, which forms the basis for the government's excessive force conviction, one of them in this case. Was there any evidence presented that there was an ongoing maybe cooperation between this particular law enforcement, state police, and the FBI in that area, or is it similar to what we saw here in Scheffler, or is that distinguishable as well? I believe that's distinguishable and well. There was evidence at trial that Trooper Wandersee had the cell phone number of one of the agents involved in the investigation. But again in Snyder, this court noted that the FBI actually had a presence in that office, that they had office space, they had a task force officer assigned to that office, and they also had an FBI agent who had his office space in the state law enforcement office in Snyder, and this court found that that raises a possibility, certainly, that there's going to be federal involvement, but not a reasonable probability, so it was insufficient in that case. And Trooper Wandersee testified in this case that there was no formal procedures in place between the FBI and the state police for investigating excessive force cases, so it wasn't like there was a pipeline set up or a task force had been deployed in Henry County to investigate excessive force cases there, Your Honor. Your Honor, if there are no further questions on this argument, I'll just reserve the remainder of my time for rebuttal. Thank you, Counsel. Thank you. We'll hear from Mr. Wood. Your Honor, may it please the Court, Bob Wood on behalf of the United States. The Court should affirm, I'll start by picking up on one place where Mr. Bont is recasting one of our arguments. We're not asking for a bright-line rule. As in so many circuits, as in Scheffler, the question is framed first about what the nature of the federal offense is, and then you look at the evidence. We can argue all day about concepts relating to core federal concerns. The point is the government can't take it for granted, like in Johnson, the Ninth Circuit case. The government was taking for granted that this was a federal concern and that the lie would make its way to the federal agents. You have to have some evidence, and there's plenty of evidence in this case, and the issue is about the evidence. I will say on this conceptual debate over whether it's a core federal concern, the State of Indiana does not even have a counterpart charge for civil rights violations. This is not like Snyder where you've got robbery in the state, you've got robbery in the feds, there might be some overlap there. There is no such charge, and our response to the Pettit policy argument was general in our brief. It was that 1512, the federal nexus, isn't about charging decisions. The Pettit policy is about charging decisions. The federal nexus here is about investigations, and so the Pettit policy doesn't have any relevance at all, and even if it did, how could a criminal recklessness misdemeanor vindicate a substantial federal interest in policing civil rights violations? Especially, I will quarrel with one attempt to distinguish Scheffler, of course death is the most serious result of excessive police action, but what Mr. Strong did here was very, very serious, and it's the kind of thing that if you take a holistic look at the evidence here, almost always ends up on the FBI's desk. It ended up on multiple FBI agents' desks here. Agent Kempf wasn't even the first. There is plenty of evidence. If you just look through a pinhole at Detective Wandersee's testimony, you might be able to say the jury could draw an inference one way or the other, but nothing about his evidence, Mr. Strong's view of the evidence, takes account of what the jury was allowed to draw inferences from, and that is the FBI agent's testimony about how the FBI views these things. That's what matters here. Mr. Wandersee, in Mr. Strong's argument's view, Mr. Wandersee has to be omniscient. He has to know everything about what the FBI did in every case, and of course, Mr. Wandersee testified truthfully that he wasn't involved with the FBI in a whole host of cases, but by contrast, the FBI agent testified. This took up a substantial amount of my time reviewing these cases and declining them, reviewing them, and taking them, and the jury was allowed to take that evidence and draw an inference from it that their federal nexus requirement was met. How do you respond to counsel's contention that the factors outlined in Scheffler do not lay on properly to the facts that we have in front of us here, in particular, the FBI cooperation, the timing, those sorts of things that we outlined in Scheffler, and how they apply here? Well, I'll start with non-timing. So, everything is laid out in our brief that tries to track the structure of Scheffler. Scheffler is not neatly, you know, it's an artfully written opinion and not neatly broken down into a multi-factor test, but for clarity, the government's brief tries to break it down into categories. Plenty of evidence from H and Kemp about routine, regular cooperation between the FBI and the state. Even Wandersee said they generally, the FBI generally takes an interest in such cases, generally means more likely than not, and that meets the federal nexus standard. There's plenty of evidence that task force officers, other people are involved with the FBI on this. Just the simple fact that Agent Kemp said this takes up a lot of his time and talked about how the FBI takes civil rights violations seriously. This is one of the main things they do at this post. All of that, and said that he ensures a flow of information, a regular flow of information from the state, from the cities, from the counties, to him or his office. That is evidence that is exactly the same as the evidence in Scheffler, I would say. It fits exactly within the category Scheffler describes. And on timing, of course, Scheffler was much faster, but it's not as though there are no precedents relevant to this. In Belize, the court, not even in dicta, but in one of the concluding statements, said investigative materials making their way to the FBI months later, exactly the same here, is evidence of federal nexus. And so, you know, the timing investigations take a very long time. It was kind of serendipitous that the FBI Agent Kemp was in the office, same office as Wandersee, when Wandersee picked up this case and told him about it. He told him about it because, as he said, the FBI generally handles these things, not us. But it also was a simple matter of the fact that they overlap regularly. And then, so we have that immediate evidence. Of course, he didn't turn the report over then. But the fact that the FBI got it months later, or at least Kemp got it months later, when the FBI actually got it, we don't have a witness to that, but sometime earlier, that's just the normal operation of an investigation. Investigations of something like this, in contrast to, say, a reactive investigation involving a shooting, they don't happen immediately. The FBI takes its time and assesses these things and probably had a lot of them. I mean, Mr. Strong is responsible for multiple reports to the FBI about incidents involving his excessive force in the state. So, as we argued in our brief, it just further proves the point that this happens. It's reasonably likely to happen. And neither the district judge nor the government, in any way here, endorses reasoning that should be taken for granted, that the federal offense automatically meets the standard. As the judge said, you know, she, Mr. Strong characterizes her reasoning as, oh, there's a federal offense and we're done here. She talked about regular cooperation. We have it block quoted in our brief. Regular cooperation. They're always in the same place. They're these task force officers. Agent Kemp discussed, testified about how this is a main thing he does. The district judge took this seriously. The jury, apparently, I mean, the jury's a black box, but they apparently drew inferences based on FBI Agent Kemp's testimony rather than State Detective Wandersee's testimony. And I think, you know, I've gone off a little bit from the Scheffler question, but I think, you know, our brief catalogs why this is on all fours with Scheffler. The timing's a little bit different, but there's plenty of precedent for that, too. And unless there are other questions, I think I'll rest on my brief. Thank you, Counselor. For Bowe, Mr. Bowe? Yes, Your Honor. Thank you. I'll just respond to the government's arguments and the order that I wrote them down. The government argues that there's no state counterpart to the federal civil rights statute, but I think that ignores the fact that these sorts of cases are routinely prosecuted by state prosecutors as assault or battery type of a charge. Certainly in Marion County, there's been a lot of publicity about the prosecutor prosecuting these sorts of cases, and that's one of the districts that is, well, it's the largest district in the Southern District of Indiana. So I just cite that as an example. And in this case, you know, in fact, my client was prosecuted for a state crime, and a special prosecutor was appointed, so I think that shows that there is a process available that the state follows in these sorts of cases. They don't just pick the prosecutor from the county where the arrest took place. They appoint a special prosecutor. So I do think that the state is adequately equipped to handle these sorts of cases, and for that reason, they're not always federal. And there's data to support that the state has taken on these types of cases. That's correct, Your Honor. It wasn't in the record in this case, but the only evidence in the record about data was from Trooper Wandersee, who said that 2 out of 40 was the only time the FBI had been involved. The FBI agent did testify, as Mr. Wood pointed out in this case, that generally the FBI is interested in these sorts of cases, etc., but there was no specific testimony as to what that means in the Southern District of Indiana, how many cases are investigated, how many cases go federal, what the cooperation looks like, or anything of the sort. The record is devoid of that sort of evidence. In fact, I noted this in our brief, but the FBI case agent to whom the Strong prosecution was initially assigned did not testify at the trial, so we don't know from him why he became involved in this case, period, end of sentence. The government made reference to that this isn't the first incident involving Mr. Strong, and it is true that he was prosecuted for a July 2017 incident involving shooting of a beanbag round at a correctional facility. However, that did not come to light until this case, so I think that's another indication that there was no federal involvement in that case in 2017. It wasn't reasonably probable in this case that there was going to be federal involvement, until some reason, which the record doesn't tell us, months later, when the FBI reached out, requested the file, and then years later, before they filed their indictment. So for those reasons, Your Honor, I would ask the court to vacate the conviction for Strong on count 2 of the indictment, and if there are no further questions, I'll relinquish the remainder of my time. Thank you, Counsel. Thank you. The court will take the matter under advisement.